## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL P. SAYLOR** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **AUTOZONE DEVELOPMENT** | : | **NO. 07-2491** |
| **CORPORATION** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                         **September 23, 2010**

In this action for breach of a contract for the sale of land, the facts are not in dispute. The parties disagree on the interpretation of the contract. Thus, we must decide, as a matter of law, whether there has been a breach of the contract.

On February 22, 2006, Michael P. Saylor ("Saylor"), the owner of a parcel of land in Allentown, Pennsylvania, agreed to sell that land to Autozone Development Corporation ("Autozone"), which intended to construct and operate a retail automotive parts store on it. At the time the agreement of sale was executed, Autozone paid a $5,000 deposit. The sale was contingent on Autozone obtaining the necessary building permits and zoning approvals for the intended use of the land. Autozone also reserved the right to terminate the agreement if it was unable to obtain a title insurance commitment, satisfactory soil and environmental test results, and the necessary building and zoning approvals within 150 days of the execution of the agreement. Autozone had the option of terminating the agreement at the end of the 150 days due diligence period or extending that period for an additional 90 days by making an additional $5,000 deposit.

On July 10, 2006, with the due diligence period due to expire in eleven days,

Autozone exercised its right, under paragraph 11 of the agreement, to extend the period an additional 90 days until October 21, 2006, and paid an additional $5,000 deposit as required by the agreement.

On July 11, 2006, the parties executed an amendment to the agreement. They amended paragraph 20 of the agreement by substituting one sentence for another. The amendment did not affect any other provision in the agreement. The new language in paragraph 20 reads: "Purchaser shall then give written notice ("Notice of Intent to Close") by August 21, 2006 which notice shall include the date, time and place of Closing and which Closing date shall not be later than October 21, 2006, and by August 28, 2006, Purchaser shall deposit two hundred seventy five thousand and no/100 dollars ($275,000.00) (the "Closing Deposit") with Escrow Agent."

As amended, paragraph 20 in its entirety reads:

> Upon the expiration of the Due Diligence Period provided for in Section 5 hereunder said Ernst (sic) Money shall be paid to Seller and, upon written notice to Seller and Escrow Agent Purchaser may terminate this Agreement for any reason whatsoever. Said written notice shall release both Purchaser and Seller from this Agreement and neither party shall have any further liabilities or obligations under this Agreement and Seller shall retain the earnest money as Seller's sole remedy for such termination. If Purchaser does not terminate this Agreement as hereinbefore provided in this Section 20, Purchaser shall deposit five thousand and no/100 dollars ($5,000.00) (the "Additional Deposit") with Escrow Agent, in which event, Purchaser shall have an additional ninety (90) days ("Additional Due Diligence Period") of due diligence, after which Purchaser shall again be permitted to terminate this Agreement upon written notice thereof to Seller on or before the expiration of the Additional Due Diligence Period, which notice shall release both parties of this Agreement and said Additional Deposit shall be paid to Seller and Seller shall return the Earnest Money and the Additional Deposit as Seller's sole remedy for such termination. In the event Purchaser does not terminate this Agreement on or before the Additional Due Diligence Period, Purchaser shall then give written notice ("Notice of Intent to Close") by August 21, 2006 which notice shall include the date, time and place of Closing and which Closing Date shall not be later

than October 21, 2006, and by August 28, 2006, Purchaser shall deposit two hundred seventy-five thousand and no/100 dollars ($275,000.00) (the "Closing Deposit") with Escrow Agent. In the event Purchaser does not complete Closing and pay the full Purchase Price to Seller on Closing Date, Seller shall return the Earnest Money, Additional Deposit and the Closing Deposit as liquidated damages, in which event this Agreement shall terminate and be null, void and unenforceable and neither party shall have any further liabilities or obligations hereunder. Notwithstanding the foregoing, if Purchaser does not terminate the Agreement, any and all deposits, including the Earnest Money, Additional Deposit, and the Closing Deposit, shall be credited to the Purchase Price at the closing of escrow.

On August 18, 2006, Autozone gave written notice of its intent to close on the sale. It did not make an additional deposit of $275,000 by August 28, 2006. Instead, by letter dated August 31, 2006, Autozone informed Saylor that it was terminating the agreement, pursuant to paragraph 11, because it had not obtained the necessary approvals.

Saylor contends he is entitled to the additional $275,000 deposit that was due on August 28, 2006 because Autozone wrongfully terminated the agreement and failed to close. Autozone does not contest Saylor's right to keep the $10,000 deposit it already paid.[1] It argues that it has no further liability because it properly terminated the agreement for lack of the necessary approvals. The disagreement is one of contract interpretation.

### Legal Standard

Under Fed. R. Civ. P. 56(c)(2), summary judgment is proper "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Judgment under Rule 56 shall be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate

---

[1] In its motion, Autozone sought the return of the $10,000.00 on deposit. At oral argument before Judge Golden, it conceded that Saylor was entitled to the deposit held in escrow.

burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *Intervest Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(c). Once the moving party has met its initial burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), not bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

Standards for resolving motions for summary judgment do not change when the parties file cross-motions. *Southeastern Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1512 (E.D. Pa 1993). Although a court may consider cross-motions for summary judgment concurrently, it must resolve the motions independently. *Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993). The fact that both parties have moved for summary judgment "does not mean that the case will necessarily be resolved at the summary judgment stage," *Atlantic Used Auto Parts v. City of Phila.*, 957 F. Supp. 622, 626 (E.D. Pa. 1997), or that either party has waived its right to have the case presented to a jury. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).

## Discussion

Under Pennsylvania law, which the parties agree governs, the Court's primary task

4

in contract interpretation is determining the intent of the parties. *401 4th St., Inc. v. Investors Ins. Group*, 583 Pa. 445 (Pa. 2005) ("The purpose of [interpreting a contract] is to ascertain the intent of the parties as manifested by the terms."). In doing so, effect must be given to all the provisions in the contract. *Murphy v. Duquesne Univ. Of the Holy Ghost*, 777 A. 2d 418, 429 (Pa. 2001) ("The whole instrument must be taken together in arriving at contractual intent.").

When the contract language is clear and unambiguous, the court construes the contract as a matter of law. *Trizechahn Gateway LLC v. Titus*, 976 A. 2d 474, 483 (Pa. 2009). On the other hand, where the contract is ambiguous, it is for the factfinder to ascertain the parties' intent. *Id.* Merely because the parties interpret the contract differently does not mean it is ambiguous. *Espenshade v. Espenshade*, 729 A. 2d 1239, 1242 (Pa. Super. 1999). Only where different constructions are capable of being understood in more than one sense is a contract ambiguous. *Insurance Adjustment Bureau v. Allstate*, 905 A. 2d 462, 468-69 (Pa. 2006). Where the alternative meaning is unreasonable, there is no ambiguity. *Murphy*, 777 A. 2d at 430.

The contract here is unambiguous. The two provisions, paragraphs 11 and 20 as amended, must be read together. The amendment to paragraph 20 did not alter the meaning of paragraph 11. Indeed, the amendment specifically provided that "all other provisions of the Agreement shall remain in effect except as modified by this Amendment. If there is a conflict between this Amendment and the Agreement, then the provisions of this Amendment shall control." Amend. ¶ 4.

There is no conflict between the amendment and any provision in the agreement.

The amendment merely inserts specific dates for Autozone to notify Saylor that it intended to close, the last date for closing and for payment of a $275,000 "Closing Deposit." These changes did not affect any other provision in the agreement. Thus, paragraph 11, the "Zoning and Permits" provision, was unaffected by the amendment.

Autozone exercised its right to cancel the agreement after it failed to obtain the necessary authorizations and permits to build and operate a retail automotive parts store on the land. The parties agree that Autozone can not use the land as intended because it did not get the necessary permits. Autozone had the "sole and absolute discretion" to exercise its right. It did so within the extended due diligence period.

Saylor argues that the amended paragraph 20 required Autozone to make an additional deposit of $275,000 by August 28, 2006. He contends that he is entitled to retain not only the $10,000 deposit already made, but also the $275,000 deposit required by the amendment that was not made. Autozone counters that Saylor's sole remedy, under the circumstances, is retention of the $10,000 deposit.

Even if Autozone had made the $275,000 "Closing Deposit," it would be entitled to its return. Its right to terminate the agreement under paragraph 11 was unaffected by the amendment to paragraph 20. Despite the amendment, Autozone still had the option, "at its sole and absolute discretion," to terminate the agreement, "without owing any liability to Seller," in the event it did not get the necessary approvals and permits.

Paragraphs 11 and 20 address different reasons for termination. Paragraph 11 applies when the necessary building and zoning permits are not obtained. Paragraph 20 encompasses all reasons for termination. Although an argument may be made that the latter includes the former, such interpretation yields an unreasonable or absurd result. No

6

reasonable reading of the agreement, as amended, could be that Autozone had agreed to purchase the land even if it could not use it for a retail auto parts store. Thus, we conclude that paragraph 20 does not trump paragraph 11.

The "Option to Cancel" provision, paragraph 20, allows Saylor to keep the "Earnest Money," the "Additional Deposit" and the "Closing Deposit" in the event Autozone failed to close. The "Zoning and Permits" section, paragraph 11, is silent as to the disposition of the earnest money and the additional deposit. Although it does state that Autozone may terminate the agreement "without owing *any* liability" to Saylor, Autozone agrees that it may keep the earnest money and additional deposit. (Emphasis added).

## Conclusion

Interpreting the unambiguous terms of the contract, we conclude that Saylor is not entitled to the closing deposit, but is entitled to the $10,000.00 deposit in escrow. Therefore, Autozone's motion for summary judgment will be granted in part and denied in part, and Saylor's motion for summary judgment will be granted in part and denied in part.